IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, *et al.*, | * * * * | |
| Plaintiffs, | * | |
| v. | * * | Civil Case No.: SAG-25-1230 |
| DEPARTMENT OF EDUCATION, *et al.*, | * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This Administrative Procedure Act case stems from the Department of Education's efforts to dismantle its Institute of Education Sciences ("IES"). Congress created IES to create, collect, and disseminate research about education in a timely and technologically up-to-date fashion. Until recently, IES relied on about 200 staff members and a large number of external contracts to fulfill its various statutory duties. But the new Administration summarily terminated 90% of IES's staff members (the "reduction in force" or the "RIF") and 99 of its outside contracts, leaving IES with few resources to accomplish its statutory directives.

Plaintiffs American Educational Research Association ("AERA") and Society for Research on Educational Effectiveness ("SREE"), two organizations of education researchers, filed this lawsuit fearing they may lose access to education data that they rely on for their research. Soon after, they asked this Court to issue a preliminary injunction reversing what they call the "Termination Actions"—that is, the RIF and the contract cancellations. Both of those challenges, at their core, are challenges to the dismantling of IES.

1

Plaintiffs seem to be right that, today, IES is not doing a number of tasks Congress requires of it. And they may well be right that IES is unlikely to fulfill many of its statutory functions in the future. The Court likewise takes Plaintiffs at their word that not receiving data they expected to receive will harm them. But the record in this case underscores that it is poorly suited for preliminary relief.

Although at different points Plaintiffs have framed their contract-termination arguments broadly and narrowly, both of those approaches have serious problems. Where Plaintiffs frame their contract claims as one sweeping agency action, they lump in swaths of individual terminations that likely were within the government's discretion. They also seem to make the kind of programmatic challenge the APA disfavors, and struggle to demonstrate a singular final agency action. But in a second round of briefing, Plaintiffs' efforts to be more particular have created a dizzying array of factual discrepancies and have fostered disputes over the proper interpretations of no fewer than a dozen statutes. As Plaintiffs get nearer to asking this Court to reinstate specific contracts, they run into standing problems and Tucker Act concerns. Additionally, Plaintiffs have a steep hill to climb in seeking a mandatory preliminary injunction to reinstate contracts that have been terminated since February, and they have not shown they are entitled to this sort of extraordinary relief.

Plaintiffs fare no better on the RIFs.[1] In asking this Court to order the government to reinstate a large number of employees without any information about which employees performed

_____

[1] The United States District Court for the District of Massachusetts has entered a preliminary injunction requiring the government to refrain from finally terminating, and indeed to also affirmatively reinstate, all Department of Education employees subject to the RIF, including IES employees. *See New York v. McMahon*, – F. Supp. 3d – , 2025 WL 1463009 (D. Mass. May 22, 2025). The First Circuit declined to stay the district court's preliminary injunction pending appeal. *See Somerville Public Schools v. McMahon*, – F.4th – , 2025 WL 1576570 (1st Cir. June 4, 2025). The government filed an application in the Supreme Court of the United States for a stay

critical statutory functions and which did not, Plaintiffs again seek an overbroad mandatory injunction. Plaintiffs have not shown they have standing to seek that relief.

This Court's assessment is a preliminary one based on a limited and quickly evolving record. It is not, and should not be taken as, predictive of this Court's ultimate decision on the merits. These Plaintiffs have alleged, and have provided some evidence to support, a troubling pattern of conduct at IES. They have plausibly suggested that IES will be unable to fulfill its statutory duties in its shrunken state. But because they cannot make the requisite showings on the preliminary injunction factors, and in particular have not shown they have standing to seek the relief they are asking for, their motion for a preliminary injunction must be denied.

## I.    BACKGROUND

### A.    Factual Background

Congress created the Institute of Education Sciences in 2002, although the federal government has supported education research since the late nineteenth century. 20 U.S.C. § 9511; *see also* Bureau of Educ., *Report of the Comm'r of Educ., Made to the Sec'y of the Interior* (Oct. 27, 1870), [https://perma.cc/68BY-UB4M]. In creating IES, Congress directed it to "compile statistics, develop products, and conduct research, evaluations, and wide dissemination activities…supported by Federal funds appropriated to the Institute." 20 U.S.C. § 9511. The authorizing statute provides:

> **(1) IN GENERAL** The mission of the Institute is to provide national leadership in expanding fundamental knowledge and understanding of education from early childhood through postsecondary study, in order to provide parents, educators, students, researchers, policymakers, and the general public with reliable information about—

---

of the injunction on June 6, 2025. *See McMahon v. New York*, No. 24A1203 (2025). Justice Jackson requested a response to the application from the Plaintiffs, which is due on June 13, 2025. *Id.*

> **(A)** the condition and progress of education in the United States, including early childhood education and special education;
> **(B)** educational practices that support learning and improve academic achievement and access to educational opportunities for all students; and
> **(C)** the effectiveness of Federal and other education programs.

*Id.* IES has four centers, all created by Congress: the National Center for Education Statistics ("NCES"), the National Center for Education Research ("NCER"), the National Center for Special Education Research ("NCSER"), and the National Center for Education Evaluation and Regional Assistance ("NCEE"). Congress specifically appropriated $807 million dollars to fund IES specifically in March, 2025. Dep't of Educ., Fiscal Year 2025 Budget Summary at 1–6, 63–65, and 71–85 [available at https://perma.cc/N4NA-JDRJ]. NCEE is statutorily required to operate Regional Education Laboratories ("RELs"). 20 U.S.C. § 9564(a). No one disputes that IES and its centers have supported the creation and dissemination of important research that has helped educators improve student outcomes.

On February 10, 2025, a staff member from the Department of Government Efficiency ("DOGE") arrived at DOE with, according to Plaintiffs, a list of 89 IES contracts to cancel. ECF 12-5 at 95. All of those contracts were cancelled within 24 hours without any justification. *Id.* IES research analysts were not consulted. On February 13, IES cancelled all ten of its contracts to operate RELs. Dep't of Educ., Press Release, U.S. Department of Education Cancels Additional $350 Million in Woke Spending (Feb. 13, 2025) [https://perma.cc/WR8N-VTHV]. DOGE has taken credit for the associated "savings" on X and its website.[2] Dep't of Gov. Efficiency, *Savings* [https://perma.cc/K9GZ-8BUR]. Plaintiffs collectively call this series of events the "Research Termination Action."

---

[2] President Trump signed an Executive Order directing the DOGE to cut federal contracts on February 26, 2025. EO 14222.

Because IES only had about 200 staff members, it relied heavily on contracts and grants to carry out its core functions. On March 11, 2025, DOE announced a mass reduction in force ("RIF") that terminated 90% of IES's staff, leaving 20 remaining staff members. The terminated staff members were placed on administrative leave on March 21, 2025, they received formal RIF notices on April 10, and their terminations were to be final on June 10, absent the court order referenced above.

On March 20, President Trump signed an Executive Order to dismantle the Department of Education in its entirety. EO 14242.

    B.    <u>Procedural History</u>

Plaintiffs filed this lawsuit on April 14, 2025. ECF 1. The Complaint includes two counts: an Administrative Procedure Act claim under 5 U.S.C. § 706(2) (Count One), and a stand-alone (ultra vires) Separation of Powers claim (Count Two). On April 29, 2025, Plaintiffs filed a motion for a preliminary injunction seeking three forms of relief: an order requiring IES to revoke the RIF, remove impacted employees from administrative leave, and return them to their roles carrying out IES functions; an order requiring IES to reinstate the contracts it terminated; and an order requiring Defendants to "take prompt action to preserve all data collected in research conducted by contractors with contracts cancelled…including by immediately communicating that such data should not be destroyed." ECF 12-2. The government opposed, ECF 27, and Plaintiffs filed a reply memorandum, ECF 30. With their reply, Plaintiffs provided an alternative proposed order fashioned as a Section 705 stay seeking five forms of relief. ECF 30-2/

This Court held a preliminary injunction hearing on May 21, 2025. At the conclusion of the hearing, this Court ordered the government to produce the at-issue contracts to the Plaintiffs. Based on their review of those contracts, Plaintiffs provided a detailed supplement explaining

which of the terminated contracts related to IES's specific statutory mandates, and which did not. ECF 44. The government responded, and argued for the first time that it intended to rebid or consider reinstating the terminated contracts that performed functions required by statute. ECF 46. Plaintiffs filed a motion for leave to respond to those new factual assertions, ECF 47, that will be granted.

## II.    LEGAL STANDARD

A preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023). Where the government is a party, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant, here the Plaintiffs, must establish all four elements to prevail. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

A preliminary injunction affords "'an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks*, *LLC*, No. SAG-18-2315, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances.") (citation omitted). Since preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain*

*Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.*

Section 705 of the APA permits a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of review proceedings" where "required and to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. "The factors governing issuance of a preliminary injunction also govern issuance of a § 705 stay." *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 950 (D. Md. 2020) (quoting *Dist. of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 16 (D.D.C. 2020)).

## III.    CONTRACT CANCELLATIONS

Plaintiffs have two competing, but ultimately interrelated, theories underlying their request for a preliminary injunction reinstating IES's terminated contracts. The first is that the contract terminations constituted a single discrete agency action. The second, which this Court invited to some extent, is a more individualized challenge to specific contract terminations (although Plaintiffs still challenge 84 of 99 of them). At this preliminary stage, this Court cannot find Plaintiffs are likely to succeed on the merits under either theory.

At first, Plaintiffs framed their challenge broadly as contesting a single agency action terminating 99 distinct contracts. But that is not quite what happened. There was no singular policy or pronouncement terminating all of the contracts at issue in this case. It is right that IES appears to have terminated 99 contracts in a matter of days without any justification or deliberative process. But timing alone does not make it proper to challenge all 99 terminations as one common agency action.

Further, in asking for this broad relief, Plaintiffs ask this Court to act as indiscriminately as they claim the government did when terminating the contracts. APA relief must be drawn by scalpel, not battering ram. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). The APA expressly precludes programmatic challenges as opposed to challenges to discrete acts to preserve the autonomy of agencies in deciding how to fulfill their statutory functions. *Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 194 (4th Cir. 2013). As the Supreme Court noted in *Lujan v. National Wildlife Federation*, establishing even a strong claim to relief as to some decisions does not entitle the Plaintiffs to relief as to "all such decisions." 497 U.S. 871, 891 (1990). For an informational injury to be cognizable under Article III, a plaintiff must show that they (1) "lack access to information to which [they] are legally entitled," and (2) the "denial of that information creates a real harm with an adverse effect." *Dreher v. Experian Info Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017). Although Plaintiffs likely enjoyed the use of broader data, they are only legally entitled to data Congress expressly mandated IES to keep and disseminate. Under that standard, Plaintiffs have not shown they were "legally entitled" to the products of *all* 99 terminated contracts. Put differently, they have not shown that *everything* IES once did, and now is not doing, amounts to IES shirking a statutory mandate. Plaintiffs have failed to show that there was a distinct final agency action terminating *all* of the contracts, or that it is nevertheless appropriate to consider all of the terminations together.

After the hearing, the parties engaged in expedited discovery to further the develop the record on which contracts were required by statute, and submitted supplemental briefs discussing what research Congress specifically required IES to conduct. This Court expressed at the hearing, and the parties agreed, that Plaintiffs would have standing to challenge the government's failure

to perform a Congressionally mandated duty if they could demonstrate that a member of one of the Plaintiff organizations was harmed by losing the statutorily required information.

At this stage, Plaintiffs are essentially asking this Court to reinstate 84 different contracts that they argue implement statutory directives. That narrower contention spurred a whole host of factual disputes—based on the quickly evolving situation at IES—that underscore why a preliminary injunction is improper here. The government now seems to admit that IES has to exist and do certain things, and has made less vague assertions about how it plans to ensure IES is performing the functions required by Congress. To be sure, the government has done much to cast doubt on the usual presumption that it will "will act properly and according to law." *F.C.C. v. Schreiber*, 381 U.S. 279, 296 (1965). But there remains a lot of uncertainty about whether, and to what extent, the government's IES shakeup falls within appropriate agency discretion. Everyone agrees that there is some permissible reorganization and downsizing of IES. And now, everyone agrees that there is a limit to how much IES can unilaterally reorganize or decline to perform its statutory functions without input from Congress. But the parties have failed, despite this Court's urging, to draw any coherent lines on the present preliminary record. And Plaintiffs bear the burden at this stage.

Plaintiffs run into problems by asking this Court to order the government to reinstate specific contracts. Usually, people who are not party to a contract (or a third-party beneficiary) do not have standing to sue based on the contract. These Plaintiffs likely *do* have standing to challenge the harms they are experiencing because IES is not taking steps necessary to fill its statutory duties. *See Dreher*, 856 F.3d at 345. But they cannot ask for—and this Court cannot order—IES to fulfill its duties through a specific contract. There are a whole host of reasons why this is so. First, the contract recipients are the most directly impacted, and it would intrude on their autonomy to

reinstate their contracts when they have not asked for that outcome and might not want it. *See FDA v. All. for Hippocratic* Med, 602 U.S. 367, 379–80 (2024) (rigorous standing requirements "serve[] to protect the autonomy of those who are most directly affected so that they can decide whether and how to challenge the defendant's action."). Second, ordering IES to reinstate specific contracts—when all agree that IES could fulfill its statutory mandates in other ways—would be impermissible micromanagement of the agency's operations. *See Lujan*, 497 U.S. at 899. And third, intervening as to any specific contract may raise Tucker Act issues that are rapidly evolving in this Circuit and nationwide.

In sum, these Plaintiffs likely do not have standing to seek the relief they have requested in their preliminary injunction as to the contracts, among a whole host of other problems, and accordingly they have not showed that they are likely to succeed on the merits. But even with a stronger showing on the merits, Plaintiffs would not be entitled to preliminary relief because they have not shown that they will be irreparably harmed absent an order reinstating some or all of the contracts. IES terminated the at-issue contracts in February. A preliminary injunction or Section 705 stay would not serve to preserve the status quo, but rather return IES to its status before February 10. The record before this Court suggests that a lot of data has already been lost, and it is uncertain what would happen if this Court ordered the contracts reinstated. The government has represented that it will maintain access to existing data, a chief and more pressing concern. Ultimately, Plaintiffs have not demonstrated that a preliminary injunction is necessary to prevent further irreparable harm. Instead, reinstating these 99 contracts would again disrupt the status quo prior to final resolution on the merits. Plaintiffs therefore have not made the requisite showing warranting such extraordinary preliminary relief.

IV.    **THE REDUCTION IN FORCE**

Plaintiffs run into many of the same problems as to their reduction-in-force related claims. The record in this case does not support indiscriminate, broad, mandatory preliminary action here either. There is no evidence in the record about which employees or types of employees performed tasks related to statutorily mandated functions. Plaintiffs' position seems to be that every staff member was essential, but they have provided no specifics as to which employees (or types of employees) performed essential functions. Congress does not require IES to maintain a certain number of staff members, and Plaintiffs are not entitled to work with particular IES employees, even if they have enjoyed working with them in the past.

This Court does not doubt Plaintiffs' contention that IES has gone too far in terminating employees. By firing over 90% of IES's employees, the government has left the agency without enough people to fulfill its statutory mandates. But again, Plaintiffs have failed to draw a line between permissible agency discretion and impermissible disregard of statutory duties. The agency clearly has the authority to fire *some* people, but not so many that it functionally shutters its doors. Because Plaintiffs' standing is based on informational injury, they need to connect terminated employees to their loss of statutorily required data. *See Dreher*, 856 F.3d at 345. But Plaintiffs went for the broader approach, asking this Court to order everyone reinstated. Plaintiffs' asserted injury does not give them standing to challenge the termination of every employee at IES impacted by the RIF. Where an employee was not performing a function necessary to the accomplishment of an IES duty mandated by Congress, their termination could not have caused any legally cognizable injury to Plaintiffs.

In that respect, this Court departs from *State of New York, et al. v. McMahon, et al.*, Civil No. 25-10601, and *Somerville Public Schools, et al. v. Donald J. Trump, et al.*, Civil No. 25-10677

11

(D. Mass), the consolidated cases in Massachusetts. This Court agrees that "the plaintiffs would suffer a cognizable injury under Article III if the Department were unable—in consequence of actions taken to close it down—to perform its statutorily assigned functions." *Somerville Public Schools v. McMahon*, 2025 WL 1576570, at \*2 (1st Cir. June 4, 2025). And this Court agrees with the District of Massachusetts's assessment, based on thorough factual analysis, that the Department of Education is not presently fulfilling its statutory mandates and is unlikely to fulfill them in the future. *See generally New York v. McMahon*, 2025 WL 1463009 (D. Mass. May 22, 2025). But the Plaintiffs there sought an even broader injunction, without *any* parsing of what the DOE's statutory mandates are and what employees are necessary to accomplish them. This Court believes that a careful parsing is required to avoid overbreadth, particularly in the context of such an extraordinary preliminary remedy.

In this case, where a more specific challenge illuminates the need for a closer look at supporting evidence, the Plaintiffs have not identified the employees necessary for IES to fulfill its statutory mandates. To be clear, this Court believes here, like with the contracts, that it would be improper judicial micromanagement for this Court to order IES to rehire any specific person. *See Lujan*, 497 U.S. at 899. It would also degrade the autonomy of those employees, who may not wish to return to work at IES. *See All. for Hippocratic Med*, 602 U.S. at 379–80. The right question to ask is what IES functions are required by statute, and how many staff members are necessary for IES to perform those functions. This Court agrees with Plaintiffs that they number is almost certainly far above the current 20 or so employees at IES, but without a more complete record, it could not say *where* IES's understaffing renders it unable to meet statutory requirements.

At this preliminary stage, this Court does not have a sufficient record to conclude that Plaintiffs have standing to seek the broad relief they are asking for. They accordingly have not

12

shown they are likely to succeed on the merits as they currently frame their case. This Court does not deny that—absent the injunction in Massachusetts—declining to grant an injunction to stop the RIFs from becoming final may result in harms difficult to undo. But these Plaintiffs have not made a sufficient showing on the merits for this Court to enter the preliminary relief sought, and it would be contrary to the public interest to intervene prematurely.

## V.    CONCLUSION

Plaintiffs' motion for a preliminary injunction is denied. Again, this Court's assessment is a preliminary one based on an incomplete record. This Court believes, as it said to the parties at the preliminary injunction hearing, that the right answer in this case lies somewhere in between the parties' divergent positions. The government has some discretion to downsize agencies so long as they can accomplish all of their statutory directives. It has likely gone too far in downsizing IES. But Plaintiffs have not shown that IES's authorizing statutes required it to operate precisely as it did before February, 2025. The government must operate IES in a way that complies with statutory requirements, not exactly as past administrations have. This Court is of the view that this case will be best resolved on the merits, with more information to aid this Court in finding the proper middle ground. And there is some urgency to this endeavor. The parties are accordingly ordered to confer on an expedited discovery and summary judgment briefing schedule and provide it to the Court within one week of the date of this opinion.


Dated: June 12, 2025                                     _____/s/_____
                                                         Stephanie A. Gallagher
                                                         United States District Judge

13